607 So.2d 441 (1992)
Donna S. MICHAUD-BERGER, etc., et al., Petitioners,
v.
Honorable Daniel T.K. HURLEY, Respondent.
No. 92-2216.
District Court of Appeal of Florida, Fourth District.
September 18, 1992.
Motions for Rehearing, Rehearing and Certification Denied October 13, 1992.
*442 Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for petitioners.
Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., West Palm Beach, and George H. Moss of Moss, Henderson, Van Gaasbeck, Blanton & Koval, P.A., Vero Beach, for North American Van Lines; James M. Walker of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for Effort Enterprises, Inc. and Alvin Youngblood, parties in interest.
No appearance for respondent.
Motions for Rehearing, Rehearing en banc and Certification Denied October 13, 1992.
DELL, Judge.
Petitioner Donna S. Michaud-Berger filed suit to recover damages for the wrongful death of her husband and three children and for personal injuries. She has filed a petition for writ of prohibition to disqualify the Honorable Daniel T.K. Hurley from presiding in the trial of this matter. We grant the petition.
The trial of this case began on July 20, 1992. On July 22, 1992, respondent declared a mistrial as a result of problems that occurred during jury selection. The trial began again. Late in the afternoon of July 23, respondent issued a 45-page memorandum opinion and final judgment in the case of Scheller v. American Medical International, Inc., No. 80-5519 AF (Fla. 15th Cir.Ct. July 23, 1992). The final judgment in that case denied the law firm of Searcy, Denney, Scarola, Barnhart & Shipley, P.A.'s claim for a charging lien and contained numerous findings of fact concerning Attorney John Scarola. John Scarola and Christian D. Searcy, partners in the foregoing law firm, represent petitioner in the proceedings before the trial court in the case sub judice.
In the Scheller final judgment, respondent made the following statements in regard to Mr. Scarola's representation:
The concepts of material breach and an attorney' [sic] duty of loyalty to the client are ingrained in the law. A lawyer has no greater duty than to serve the client within the law. The claim in this case that the Code of Professional Responsibility somehow justified an eleventh-hour demand that the client execute a written contract in "Scheller VI" is pure sophistry. It masked greed, overreaching and attempted extortion. Nothing in this scenario justifies a departure from traditional contract law.
The next morning, when the trial resumed in this case, the following colloquy occurred between Mr. Scarola and respondent:
MR. SCAROLA: Your Honor, with regard to the Court's order, the Court has entered an order finding that I have engaged in what 
THE COURT: May I stop you for a moment, Mr. Scarola?
MR. SCAROLA: Yes, sir.
THE COURT: You have a motion that you are filing?
MR. SCAROLA: I do not have a written motion.
THE COURT: You do not have a written motion?
MR. SCAROLA: No, sir, I DID not have an opportunity to prepare a written motion and this is more in the nature of an inquiry at this point than it is in a motion.
THE COURT: Can you tell me the subject of the matter of the inquiry without going into detail?
MR. SCAROLA: Yes, sir, I can. I need to inquire whether it's possible for me to continue to participate in this proceeding without prejudicing my client?
THE COURT: I really think that's a decision you need to make.

*443 MR. SCAROLA: Well, sir, I don't think that it's a decision that I can, that I can make without some input from the Court, and if the Court is not inclined to give me any input, then I don't think that I would have any alternative but to withdraw.
In the absence of some assurance from the Court that the Court's findings with regard to my past conduct would have no potential bearing whatsoever upon any aspect of this litigation, if I cannot receive that assurance from the Court I don't have any alternative but in the interest of my client to withdraw from further participation.
I think that my client deserves that reassurance. If I can't give it 
THE COURT: Let me stop you for a second, Mr. Scarola. I want you to know that if that were not the case the Court on its own would have alerted you to that fact. But my inquiry is as to whether you need to file any kind of a motion?
MR. SCAROLA: No, sir, I think that I am satisfied that if that's the Court's response I can give my client the reassurance that she needs that my continued participation will not be of any prejudice to her... .
... .
THE COURT: I want to assure you, Mr. Scarola, without question, without reservation that your presence in this case would in no way affect the manner in which the Court would discharge its responsibilities and I am well satisfied with that.
MR. SCAROLA: Thank you, sir.
Mr. Searcy then began his opening statement which apparently consumed most of the morning. Shortly before the court recessed for lunch, Mr. Searcy stated:
And the evidence in this case will show that inadequate [sic] measure of damages for Donna, and you need to listen to the evidence and make sure it does in fact show the preview that I discussed with you. But I think the evidence will show that the verdict to measure the damages of Donna Michaud should be no less than ten million dollars.
The trial court sustained defendants' objection on the ground that the foregoing statement constituted argument because Mr. Searcy mentioned a specific amount of damages. After the noon recess, defense counsel moved for a mistrial arguing that Mr. Searcy had violated the court's ruling by writing the words "ten mil" on a handwritten jury verdict form after the objection was sustained. The trial court had authorized Mr. Searcy's use of the handwritten jury verdict form to aid him in the discussion of the elements of damages during opening argument. At this point, another exchange occurred between the court, Mr. Searcy and defense counsel:
MR. SEARCY: ... .
I certainly in all instances am going to abide with the Court's rules. I would like to tell the Court that I have in many, many instances in opening statement have talked with the jury about the amount that I believe the evidence will show the damages should be, and I can give the Court transcripts of opening statements in many, many instances where I have done that.
So I'd like to assure the Court that in doing that I believe and do believe that I was perfectly appropriate in doing that. I think you have great discretion in your ruling and once you ruled that I immediately left that subject and did not return to it.
MR. BURNETT: My objection was made  commenced prior to any dollar figure being put on that or spoken. I can't say put on because I didn't know he put it on.
MR. SEARCY: That's not true, Your Honor. I was writing that and saying there is ten million and writing it while I said it, and you'll notice from the record that I didn't even get to finish writing "million" because when Mr. Burnett objected I interrupted right where I was in mid-stream.
MR. BURNETT: If that's not a final argument, Judge.
THE COURT: Thank you very much.

*444 Mr. Searcy, you pride yourself on being an excellent lawyer and you know and I know that what you did is wrong. You know it.
MR. SEARCY: No, sir, I do not. I take exception to that, sir.
THE COURT: It is wrong and that would be my ruling. I get the impression you're going to push as far as you can go and I can't let you do that. I want to have a fair trial.
Now that is wrong in opening statement. I'm going to grant the motion for mistrial. Bring in the jury panel.
Mr. Searcy then stated that he wished to file a motion. The court recessed the trial until Monday, July 27, and asked that the motion be filed as soon as possible. On Sunday, July 26, petitioner delivered a copy of the motion for disqualification to respondent. On Monday, petitioners filed a verified motion for disqualification together with a certificate of good faith.[1]
Petitioner alleged in her verified motion for disqualification that she had read the memorandum opinion and final judgment in Scheller, a headline and article from the Palm Beach Post dated July 24, excerpts of the transcripts from the court proceedings on July 24 and the affidavits of Christian D. Searcy and John Scarola. She stated in part that:
7. From my reading of the attached documents I fear I will not receive a fair trial in the Court where my suit is pending on account of the prejudice of Judge Hurley against my attorneys, Christian D. Searcy and John Scarola. I fear that what I perceive to be a demonstrated prejudice on the part of Judge Hurley towards Mr. Searcy and Mr. Scarola has and will continue to extend to me as their client.
8. From reading Judge Hurley's 45 page Order, I don't see how Judge Hurley could possibly have the respect for Mr. Scarola's integrity that I believe a Court must [have] for a lawyer to be an effective advocate before the Court.
... .
12. From my reading of the excerpts from my own trial, I am afraid that Judge Hurley is prejudiced against my attorney Chris Searcy. I understand that Judges make rulings all of the time in trials and I do not complain that Judge Hurley ruled against me. However, it inescapably appears that Judge Hurley has impliedly accused my attorney of being less than truthful with him. After my attorney explained to the Judge that he acted in good faith and on the belief that he was right, but would certainly abide with the Judge's ruling, Judge Hurley stated "Mr. Searcy, you pride yourself on being an excellent lawyer and you know and I know that what you did is wrong. You know it". [sic] From my reading of this excerpt, this statement implying a lack of veracity on the part of my attorney was not in any way necessary for the court's ruling. It appears to me to be an expression of prejudice against my attorney unrelated to a ruling of the Court.
13. The Court's accusation against Mr. Searcy of intentional misconduct (repeated twice by the Court) causes me to be afraid that Judge Hurley is not capable of placing any reliance whatsoever on Mr. Searcy's honesty and integrity. I do not share Judge Hurley's opinion of Mr. Searcy and I want to continue to entrust my representation to him.
14. I am of the belief that the rulings of Judge Hurley demonstrate the effect of some unknown influence other than the law and evidence presented to him. The only reasonable conclusion I can draw and have drawn is that Judge Hurley dislikes and distrusts my lawyers to such an extent that I could not possibly get a fair trial in front of Judge Hurley while my lawyers continue to represent me.

*445 For the reasons I have stated above, I sincerely fear that I will not receive a fair trial in my case on account of the prejudice of Judge Hurley against my attorneys.[2]
Respondent entered written orders denying petitioner's original motion and renewed motion for disqualification in which he stated:
ORDERED and ADJUDGED that the motion is denied. See Jackson v. State, 599 So.2d 103 (Fla. 1992) (adverse rulings not adequate ground for recusal); Fischer v. Knuck, 497 So.2d 240 (Fla. 1986) (subjective fears insufficient to require disqualification); People Against Tax Revenue Mismanagement, Inc. v. Reynolds, 571 So.2d 493 [sic] (Fla. 1st DCA 1990) (motion for disqualification must be timely); United States v. Grinnel Corp., 384 U.S. 563 [, 86 S.Ct. 1698, 16 L.Ed.2d 778] (1966) (prejudice must stem for [sic] extrajudicial source); In re J.I., 47 Fla. Supp.2d 206 (Fla. 15th Cir.Ct. 1991) (Where alleged prejudice is against counsel as opposed to a party, there must be allegations of intense personal antipathy between the trial judge and counsel.); see also J. Shaman, S. Lubet and J. Alfini, Judicial Conduct & Ethics 112 (1990).
Counsel for defendants argue in their response that the motion for disqualification was untimely and legally insufficient. We disagree. In Fischer v. Knuck, 497 So.2d 240 (Fla. 1986), the court held that a motion to disqualify must be timely filed. In Fischer, the motion for disqualification was not filed until eleven days after all testimony had been completed and five days after the judge had announced his ruling on the merits. The court in Fischer stated:
A motion for recusal is considered untimely when delayed until after the moving party has suffered an adverse ruling unless good cause for delay is shown. Data Lease Financial Corp. v. Blackhawk Heating & Plumbing Co., 325 So.2d 475 (Fla. 4th DCA 1975).
Id. at 243. Here, the events leading to petitioners' motion for disqualification essentially occurred during a period of less than twenty-four hours. Although trial began on Monday, July 20, it proceeded without incident until July 23, when respondent issued the memorandum opinion and final judgment in Scheller. The next morning, counsel asked the trial court if his appearance on behalf of petitioner would prejudice his client's case and received assurances from the trial judge that his continued appearance in the trial would not affect the trial judge's impartiality. The record does not clearly establish whether petitioner, on the morning of July 24, had had the opportunity to review the 45-page memorandum opinion and to reflect upon its contents. The law is well-established that under most circumstances if petitioner had full knowledge of the contents of the Scheller final judgment and failed to make a prompt motion for disqualification, she would have waived the findings in the final judgment as a basis for disqualification. However, here the trial judge furnished petitioner with reassurance that Mr. Scarola's representation would not prejudice her case. Her counsels' reliance on respondent's comments should not now be used as a basis to conclude that she waived the right to assert the Scheller final judgment as a ground for disqualification.
Furthermore, it appears that after the exchange between respondent and Mr. Searcy concerning the use of the verdict form and respondent's order granting a mistrial, Mr. Searcy stated that he intended to file a motion. The trial court accommodated Mr. Searcy and asked that it be filed as soon as possible. This occurred on Friday afternoon and by Sunday, petitioner delivered a copy of the motion for disqualification to respondent. We agree with the Fifth District Court of Appeal's holding in Deren v. Williams, 521 So.2d 150 (Fla. 5th DCA), rev. denied, 531 So.2d 169 (Fla. 1988), in which the court concluded that a motion to *446 disqualify the trial judge on multiple grounds discovered during the course of two trials but not filed until after the conclusion of the second trial was not untimely. The court stated:
[W]e think a motion to disqualify should be denied for untimeliness only when its allowance will delay the orderly progress of the case or it is being used as a disruptive or delaying tactic. None of these factors appears to be present in this instance so the legal sufficiency of the motion will be considered.
Id. at 152. We find nothing in the record furnished suggesting that petitioner filed her motion as a delaying tactic or as any other disruptive tactic. In our view, the circumstances giving rise to this petition furnish good cause for the delay, if any, in petitioner's filing of her motion.
With regard to the legal sufficiency of the motion for disqualification, Hayslip v. Douglas, 400 So.2d 553, 555-56 (Fla. 4th DCA 1981) and Fischer, 497 So.2d at 242, establish that the standard is whether the party has a "well-founded fear" of prejudice on the part of the trial judge. The facts must be viewed from the perspective of the petitioner. Here, petitioner was confronted with a memorandum opinion in which respondent found that one of her attorney's actions in an unrelated case involved "sophistry," "greed, overreaching and attempted extortion." Although her attorneys had received assurance from the trial judge that he would remain impartial, within a matter of hours, the same trial judge had concluded that her other attorney had intentionally acted improperly in his use of a jury verdict form. We conclude that the cumulative effect of the foregoing events, as reasonably perceived by the petitioner, constituted a legally sufficient basis for her motion for disqualification and amounted to more than a mere subjective fear that she would not receive a fair trial.
We reject respondent's reliance upon In Re: J.I., 47 Fla. Supp.2d 206 (Fla. 15th Cir. Ct. 1991). Defense counsel have not cited a Florida case in support of the circuit court's holding in In Re: J.I. cited by respondent for the premise that "intense personal antipathy" must exist between the trial judge and counsel to support a motion for disqualification. In Re: J.I. clearly conflicts with this court's opinion in Hayslip v. Douglas, wherein this court stated:
We agree with the court's observation in Brewton v. Kelly, supra [166 So.2d 834,] at 836, that "[i]t is not always possible with exact particularity in a matter of this kind to set forth facts as to the process of the human mind... ." Nonetheless, we feel certain that under the facts as alleged in Dr. Hayslip's motion, his fear was reasonable and not frivolous nor fanciful. Though a client and his counsel are separate entities, they share a common bond forged by the attorney-client relationship and tempered in the rigors of litigation. Most clients find the courtroom to be an unfamiliar and, in some instances, uncomfortable atmosphere and so it is not unusual that they entrust themselves into their counsel's care and view their interests as one. Thus, it is understandable that a client would become concerned and fearful upon learning that the trial judge has an antipathy toward his lawyer and has expressed the opinion that the client's counsel "should not be in this case."
400 So.2d at 557 (emphasis added).
In summary, this petition causes us great concern. We wish to make it clear that we have the utmost confidence in Judge Hurley's commitment to be fair and impartial and we have no doubt that petitioner would receive a fair trial from him. However, the law requires us to consider this petition from petitioner's perspective. She is entitled to enter the courtroom with confidence that she will receive a fair trial. For the reasons stated above, we hold that the cumulative effect of the foregoing events occurring within a short space of time caused petitioner to have a well-founded fear that she would not receive a fair trial.
We grant the petition, but withhold issuance of the writ since we are confident that respondent will act in a manner consistent with this opinion.
*447 LETTS, J., concurs specially with opinion.
GUNTHER, J., dissents with opinion.
LETTS, Judge, specially concurring.
I make no bones about my distaste for the current state of the law on recusals. See Hayslip v. Douglas; Nassetta v. Kaplan, 557 So.2d 919 (Fla. 4th DCA 1990). However, a three-judge panel at an intermediate level cannot change a rule of civil procedure, a statute and existing case law. It is all too easy to get rid of a judge nowadays, a result which engenders judicial impotency. Unfortunately, in my view, the law on this issue is not on Judge Hurley's side. Ironically, Judge Hurley authored the majority opinion in Hayslip v. Douglas, where we recused a trial judge for saying no more than was said sub judice.
A litigant who is in the midst of a trial and is then informed that the presiding judge believes her lawyer to be greedy, deceitful, unethical, and an extortionist, would be a fool not to have "fears" that she will not receive a fair trial. "Fear" is all that is required under the statute. See § 38.10, Fla. Stat. (1991). True, case law has engrafted "well-founded" to go with the "fear." However, in my view, the fear here was well-founded. That is not to say that I fear that Judge Hurley would not conduct himself in a fair and impartial manner. His reputation for impartiality is unequalled. Nevertheless, I cannot fault a litigant for harboring such fears and it is the litigant's fears that the current law addresses. The litigant expressed her fears in no uncertain terms in an affidavit which, in my opinion, was "legally sufficient." That is all she had to do and if she does "the judge shall enter an order of disqualification and proceed no further in the action." Fla.R.Civ.P. 1.432(d).
GUNTHER, Judge, dissenting with opinion.
I respectfully dissent. I would deny the petition for writ of prohibition.
The motion for disqualification, filed by Mrs. Michaud-Berger while the case was in progress, was based on events that occurred on July 23 and 24, 1992. On the afternoon of Friday, July 24, 1992, Mr. Searcy advised Judge Hurley that he would be filing the motion for disqualification and that it would be prepared over the weekend. On Sunday, July 26, 1992, the motion was given to Judge Hurley and then filed, together with the certificate of good faith, on Monday, July 27, 1992. After the trial court denied the motion for disqualification, Mrs. Michaud-Berger filed a renewed motion for disqualification, which the trial court also denied.
The issue is whether the trial court erred in denying Mrs. Michaud-Berger's motions for disqualification on the grounds of untimeliness and legal insufficiency. As the supreme court stated in MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332, 1334-35 (Fla. 1990):
The facts alleged in the motion need only show a well-grounded fear that the movant will not receive a fair trial at the hands of the judge. "The question of disqualification focuses on those matters from which a litigant may reasonably question a judge's impartiality rather than the judge's perception of his ability to act fairly and impartially." Livingston v. State, 441 So.2d 1083, 1086 (Fla. 1983). In order to decide whether the motion is legally sufficient, "[a] determination must be made as to whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Id. at 1087. The legal sufficiency of the motion is purely a question of law.
Furthermore, the supreme court in Fischer v. Knuck, 497 So.2d 240 (Fla. 1986), teaches us that a motion for disqualification must contain an actual factual foundation for the alleged fear of prejudice. In the instant case, the petitioner's argument that she cannot obtain a fair trial before Judge Hurley is based on essentially three facts: (1) the trial court's ruling in Scheller v. AMI, (2) the trial court's request to Mr. Searcy to have Mrs. Michaud-Berger leave the courtroom, and (3) the trial judge's *448 conduct toward and statements made to Mr. Searcy.
Mrs. Michaud-Berger's verified motion for disqualification pursuant to Florida Rule of Civil Procedure 1.432 contains the following allegations:
1. I have read the Order of Judge Hurley in the case of Scheller v. AMI which is attached as Exhibit 1.
2. I have read the front page headline and article from the Palm Beach Post dated July 24, 1992 which is attached hereto as Exhibit 2.
3. I have read the excerpts of transcripts from Court proceedings on July 24, 1992 which are attached hereto as Exhibit 3.
4. I have read the affidavit of Christian D. Searcy dated July 25, 1992 which is attached hereto as Exhibit 4.
5. I have reviewed the affidavit of John Scarola which is attached hereto as Exhibit 5.
6. The destruction of my entire family and virtually my entire life will have been completely in vain if I do not receive a fair trial by a fair jury who is not prejudiced against me or my attorneys and in front of a Judge who is not prejudiced against me or my attorneys.
7. From my reading of the attached documents I fear I will not receive a fair trial in the Court where my suit is pending on account of the prejudice of Judge Hurley against my attorneys, Christian D. Searcy and John Scarola. I fear that what I perceive to be a demonstrated prejudice on the part of Judge Hurley towards Mr. Searcy and Mr. Scarola has and will continue to extend to me as their client.
8. From reading Judge Hurley's 45 page Order, I don't see how Judge Hurley could possibly have the respect for Mr. Scarola's integrity that I believe a Court must have for a lawyer to be an effective advocate before the Court.
9. To have arrived at the conclusions expressed in the Order I have read regarding Mr. Scarola, it appears to me that it was necessary for the Court to have entirely rejected Mr. Scarola's explanation of what happened in his relationship with Dr. Scheller. In other words, Judge Hurley appears to have concluded that Mr. Scarola gave false testimony in proceedings before the Court.
10. I believe that the ability of the Court to rely upon the honesty and integrity of the lawyers who appear before the Court is essential to the lawyer's representation of a client. The Court's recent findings against Mr. Scarola convince me that Judge Hurley is not capable of placing any reliance upon Mr. Scarola's honesty and integrity. I do not share Judge Hurley's opinion of Mr. Scarola and I want to continue to entrust my representation to him.
11. My emotional torment from the loss of my family in the fiery crash that burned me badly renders me incapable of restraining tears in many instances. I had planned to attend the opening statement in my case for just a brief interval. Judge Hurley requested that I leave the court room prematurely due to my tears. I do not believe that the fact that I was a victim of such a horrible loss that I cannot deal with it without tears should impair my ability to be in the courtroom of my own case to the limited extent that I choose to be there. I am afraid that Judge Hurley's actions (taken without any request from counsel) in asking me to leave my own trial, demonstrate a prejudice against dealing with the reality of my tragedy and a prejudice against allowing the jury to deal with the reality of my tragedy.
12. From my reading of the excerpts from my own trial, I am afraid that Judge Hurley is prejudiced against my attorney Chris Searcy. I understand that Judges make rulings all of the time in trials and I do not complain that Judge Hurley ruled against me. However, it inescapably appears that Judge Hurley has impliedly accused my attorney of being less than truthful with him. After my attorney explained to the Judge that he acted in good faith and on the belief that he was right, but would certainly abide with the Judge's ruling, Judge *449 Hurley stated "Mr. Searcy, you pride yourself on being an excellent lawyer and you know and I know that what you did is wrong. You know it". From my reading of this excerpt, this statement implying a lack of veracity on the part of my attorney was not in any way necessary for the court's ruling. It appears to me to be an expression of prejudice against my attorney unrelated to a ruling of the Court.
13. The Court's accusation against Mr. Searcy of intentional misconduct (repeated twice by the Court) causes me to be afraid that Judge Hurley is not capable of placing any reliance whatsoever on Mr. Searcy's honesty and integrity. I do not share Judge Hurley's opinion of Mr. Searcy and I want to continue to entrust my representation to him.
14. I am of the belief that the rulings of Judge Hurley demonstrate the effect of some unknown influence other than the law and evidence presented to him. The only reasonable conclusion I can draw and have drawn is that Judge Hurley dislikes and distrusts my lawyers to such an extent that I could not possibly get a fair trial in front of Judge Hurley while my lawyers continue to represent me.
For reasons I have stated above, I sincerely fear that I will not receive a fair trial in my case on account of the prejudice of Judge Hurley against my attorneys.
Christian D. Searcy's affidavit states:
1. I have been a duly licensed member of the Florida Bar in good standing since 1973.
2. I have had considerable and ongoing experience in trying personal injury cases since 1973.
3. I have attended and given continuing legal education courses pertaining to areas of civil litigation, trial practice, personal injury, and wrongful death for the past 18 years.
4. I am of the sincere and good faith belief that it is appropriate in a personal injury case to inform the jury on opening statement that the evidence will show the plaintiff's damages to be a certain amount of money.
5. Attached hereto as Exhibits A, B, C & D respectively are the transcripts of opening statements from the following trials in which myself and other attorneys have specified that the evidence would show a certain amount of damages for the plaintiffs in our opening statements: Smith v. Dept. of Transportation (86-6149(CL)J, 15th Judicial Circuit, State of Florida.) tried in front of the Honorable Jack Cook by Christian D. Searcy; Zarnt v. Delta Airlines (87-8507 Civ-Paine, U.S. Federal Court for the Southern District of Florida) opening statement given before the Honorable James Paine by Robert Montgomery, Esq.; Zarnt v. Delta Airlines (87-8507 Civ-Paine, U.S. Federal Court for the Southern District of Florida) opening statement given in front of the Honorable James Paine by Christian D. Searcy, Esquire; DeBerry v. Thornton, Klomp, and Doctor's Clinic, (19th Judicial Circuit, State of Florida) opening statement given by F. Gregory Barnhart before the Honorable Morton Abram.
6. Further attached as Exhibit E, are pages 905 and 906 from Effective Opening Statements by Fredrick G. Levin, Esquire, published by Executive Reports Corporation, Englewood Cliffs, New Jersey.
7. Attached hereto as Exhibit F, are pages 19, 20, and 21 from opening statements by Alfred S. Julien, past president, the Association of Trial Lawyers of America, Callaghan and Company, copyright 1980-1986.
8. I have attended Continuing Legal Education seminars in which very experienced Florida trial lawyers speaking on the subject of opening statement in personal injury litigation recommended advising the jury of amount of damages the evidence would show on opening statement as the preferable approach to leaving the amount of damages unstated in the opening statement.
9. I have given Continuing Legal Education seminars dealing with the subject of trial practice in which I have recommended *450 the practice of informing the jury of the total amount of damages the evidence would show in opening statement in cases such as the case at bar.
10. I am not aware of any Florida cases which deal directly with the subject of mentioning on opening statement a specific amount of damages the attorney expects the evidence to show. Attached hereto as Exhibit G and H are: 4 County Electric Power Association v. George Clayton Clardy, 221 Miss. 403, 73 So.2d 144, 44 ALR 2d 1191 (1954), at 1201 and Eichstadt v. Underwood, 337 S.W.2d 684 (Ky, C of A., 1960), which hold that it is appropriate to mention in opening statement the amount of plaintiff's damages expected to be shown from the evidence.
11. On July 24, 1992, in giving my opening statement in the case of Michaud vs Effort Enterprises Incorporated d/b/a Atlantic Northamerican, et al, I sincerely believed and still do believe that I acted appropriately as an officer of the court in stating in opening statement that the evidence would show that the measure of damages for Donna Michaud's personal injury was no less than $10,000,000.
12. As I was stating to the jury that the evidence would show that the damages of Donna Michaud on her personal injury were $10,000,000, I was writing that amount on the chart I was using for demonstrative purposes. See Exhibit I, the use of which had been expressly approved by the Court in advance of my argument.
13. When Mr. Burnett objected, I discontinued writing $10,000,000, and had only written the phrase "10 mil..."
14. When the Court sustained Mr. Burnett's objection, I discontinued my plans to tell the jury what the evidence would show with regard to the other four claims for damages notwithstanding that I respectfully disagreed with the Court's ruling on that matter.
15. No further discussion of the matter occurred during my portion of the opening statement. However, after the luncheon recess Mr. Burnett again raised the issue of the propriety of my opening statement conduct.
16. Attached hereto as Exhibit J are excerpts of the relevant portions of the proceedings held before the Honorable Judge Hurley in Michaud vs Effort Enterprises of Florida, Inc. et al..

17. On page 7 of that transcript, Judge Hurley states "Mr. Searcy you pride yourself on being an excellent lawyer and you know and I know that what you did is wrong. You know it."
18. I do not know that I was wrong. I respectfully disagree with Judge Hurley's opinion on this matter, but have respectfully abided by his ruling.
19. I observed Judge Hurley to become personally animated with me when making the statement as his face reddened and the intensity of his voice increased.
John Scarola's affidavit states:
1. I have provided Donna Michaud-Berger with the attached written explanation of the facts and circumstances giving rise to the issuance of Judge Hurley's Order of July 23, 1992. By copy of this affidavit, I have also advised her of the following:
2. When the conversations occurred as reported at page seven of the partial transcript of proceedings of July 24, 1992, Judge Hurley exhibited obvious signs of anger toward Mr. Searcy in his voice and demeanor. He leaned forward in his chair and intensified his tone of voice.
3. In the 19 years I have known Judge Hurley, he has carefully avoided displays of emotion in the performance of his professional responsibilities. His exhibition of anger toward Mr. Searcy was highly unusual in my experience with him.
Judge Hurley denied the motion for disqualification and entered the following order:
ORDERED and ADJUDGED that the motion is denied. See Jackson v. State, 599 So.2d 103 (Fla. 1992) (adverse rulings not adequate ground for recusal); Fischer v. Knuck, 497 So.2d 240 (Fla. 1986) (subjective fears insufficient to require *451 disqualification); People Against Tax Revenue Mismanagement, Inc. v. Reynolds, 571 So.2d [sic] 493 (Fla. 1st DCA 1990) (motion for disqualification must be timely); United States v. Grinnel Corp., 384 U.S. 563[, 86 S.Ct. 1698, 16 L.Ed.2d 778] (1966) (prejudice must stem from extrajudicial source); In re J.I., 47 Fla. Supp.2d 206 (Fla. 15th Cir.Ct. 1991) (Where alleged prejudice is against counsel as opposed to a party, there must be allegations of intense personal antipathy between the trial judge and counsel.); see also J. Shaman, S. Lubet and J. Alfini, Judicial Conduct & Ethics 112 (1990).
Mrs. Michaud-Berger then filed a renewed verified motion for disqualification and stated:
1. I incorporate herein my previously filed Verified Motion for Disqualification and its attachments, plus the previously filed affidavit of Christian D. Searcy, affidavit of John Scarola, and Attorney's Certificate of Good Faith.
2. I have now read the Order of Judge Hurley entered today in my case, in which Order Judge Hurley says that to require the disqualification of a judge on the basis of prejudice against a lawyer, "there must be allegations of intense personal antipathy between the trial judge and counsel."
3. While I did not speak in my earlier Verified Motion specifically about my perception of the degree of prejudice on Judge Hurley's part against my lawyer, Mr. Scarola, I do in fact believe that the level of prejudice and animosity on Judge Hurley's part toward Mr. Scarola must be very high.

4. I believe this to be true because Judge Hurley has just entered an Order in a separate case saying Mr. Scarola engaged in "sophistry" and intentional misconduct toward a client and calling him greedy and an extortionist. It also appears that he believes Mr. Scarola is a liar as I explained in Paragraph 9 of my earlier Verified Motion.
5. Either Judge Hurley made these findings because he already disliked Mr. Scarola intensely, or because he believes the findings to be true. If he believes those things to be true about Mr. Scarola, that would cause any reasonable person to have an intense personal dislike of a lawyer who did those kinds of things, even if he liked him before.
6. I am afraid that this intense personal dislike on the part of Judge Hurley toward Mr. Scarola has already spilled over to both Mr. Searcy and to me as I have already stated in my earlier affidavit, and I fear it will continue to do so.
7. For these reasons, and based upon the further details I have stated in my earlier affidavit, I sincerely fear that I will not receive a fair trial in my case on account of the intense personal dislike of Judge Hurley against Mr. Scarola, and the resulting prejudice against other members of his firm and against me.
In denying the renewed motion, Judge Hurley entered an order, citing the identical cases relied upon in the previous order that denied the original motion for disqualification.
With regard to Mrs. Michaud-Berger's allegations about Judge's Hurley rulings in the case of Scheller v. AMI, it is clear from the record that, as the trial resumed on the morning of July 24, 1992, Mr. Scarola was very concerned about the trial judge's ability to be fair and impartial in light of the judge's findings against Mr. Scarola in the Scheller case. Although Mr. Scarola orally expressed his concern to the trial judge, he did not make an oral motion or file any written motion based on that concern. Moreover, Mr. Scarola did not request any additional time to file a motion. In fact, when the trial judge said, "But my inquiry is to whether you need to file any kind of a motion?", Mr. Scarola expressly declined the opportunity to file any motion based on the judgment in the Scheller case.
As the majority states, "[t]he law is well-established that under most circumstances if petitioner had full knowledge of the contents of the Scheller final judgment and failed to make a prompt motion for disqualification, she would have waived the findings in the final judgment as a basis for *452 disqualification." In my view, as discussed below, Mrs. Michaud-Berger had full knowledge of the contents of the memorandum, but failed to promptly make a motion to disqualify the trial judge and, therefore, waived the findings in the Scheller case as a basis for disqualification.
In the instant case, because Mr. Scarola obviously had knowledge of the Scheller rulings as evidenced by the verbal exchange with the trial judge on the morning of July 24, 1992, that knowledge can be imputed to Mrs. Michaud-Berger, his client. Although the majority alludes to her lack of knowledge, Mrs. Michaud-Berger's verified motion for disqualification is conspicuously silent whether she had knowledge of the Scheller rulings. Furthermore, her petition for writ of prohibition does not assert lack of knowledge of the Scheller rulings as a reason for not filing a motion for disqualification at the time Mr. Scarola first expressed his concern to the trial court. For these reasons, I conclude that Mrs. Michaud-Berger had full knowledge of the pertinent findings in the Scheller case.
Thus, in my view, since Mrs. Michaud-Berger had full knowledge of the Scheller rulings on the morning of July 24, 1992, she was required, at that time, to file a motion for disqualification. According to Florida Rule of Civil Procedure 1.432(c), a motion to disqualify shall be made within a reasonable time after discovery of the facts constituting the grounds for disqualification. Because the trial was in progress and the facts constituting the grounds for disqualification were "discovered" no later than the morning of July 24, 1992, I conclude that "a reasonable time after discovery of the facts" would be on the morning of July 24, 1992, when Mr. Scarola expressed his concern about the Scheller rulings to the trial judge. In my view, there was no legal justification for waiting until after an adverse ruling to file Mrs. Michaud-Berger's verified motion for disqualification. Thus, I conclude that the trial court correctly ruled that the motion to disqualify was untimely with regard to any grounds for disqualification based on the rulings in the case of Scheller.
The majority relies on Deren v. Williams, 521 So.2d 150 (Fla. 5th DCA), rev. denied, 531 So.2d 169 (Fla. 1988), for the proposition that the motion to disqualify was not untimely. In Deren, the petitioner, approximately three months before the scheduled trial date, filed the motion to disqualify the trial judge from presiding over the third trial of the same case. In the instant case, the trial was in progress when the motion for disqualification was filed. Obviously, in Deren, to allow the motion for disqualification of the trial judge so far in advance of the trial date would not have delayed the orderly progress of the case. But, in the instant appeal, the trial was in progress and the filing of the motion for disqualification several hours after the grounds were discussed with the trial court clearly delayed the orderly progress of the case.
Furthermore, the majority states that "[t]he record does not clearly establish whether petitioner, on the morning of July 24, had had the opportunity to review the 45-page memorandum opinion and to reflect upon its content." Mrs. Michaud-Berger, as petitioner, has the burden of alleging or arguing that she lacked knowledge of, or needed time to consider, the content of the Scheller rulings. Since Mrs. Michaud-Berger fails to allege or argue that she lacked knowledge, or needed time to consider, the content of the Scheller rulings, I conclude that her lack of knowledge of the Scheller rulings is not an issue before this court. As stated earlier, under the facts of this case, Mr. Scarola's clear understanding of the content of the Scheller rulings is imputed to Mrs. Michaud-Berger.
Thus, in my view, contrary to the majority opinion, Mrs. Michaud-Berger had full knowledge of the pertinent facts in the Scheller case as imputed to her from Mr. Scarola; Mrs. Michaud-Berger failed to file a prompt motion for disqualification on July 24 when Mr. Scarola first expressed his concern to Judge Hurley about the Scheller rulings; Mrs. Michaud-Berger has furnished no good cause for delaying the filing of the motion until after receiving *453 an adverse ruling; and Mrs. Michaud-Berger's delay in filing the motion halted the orderly progress of the case. Consequently, I conclude that Mrs. Michaud-Berger's motion for disqualification based on the Scheller rulings was untimely and that she, therefore, waived those rulings as a ground for disqualification of Judge Hurley.
As to Mrs. Michaud-Berger's other grounds to disqualify the trial judge, although I agree with the majority that those grounds were timely raised by the petitioner, I conclude that those grounds, as discussed below, are legally insufficient.
In her motion for disqualification, Mrs. Michaud-Berger also alleged that she has a well-grounded fear that she cannot obtain a fair trial because, even though the trial was in progress, Judge Hurley told Mr. Searcy to have her step outside the courtroom. Earlier in the trial, Mrs. Michaud-Berger began crying and Mr. Searcy escorted her from the courtroom without anyone requesting that he do so. After she left the courtroom, Judge Hurley stated:
THE COURT: Mr. Searcy, I understand how difficult this is. But I think you need to, we need to be sure that we are not going to have a problem like that. I don't know what to tell you. I don't know how we can handle it, but obviously I'm worried. If that becomes a repeated problem how we are going to handle it, I don't know what to do about it.
... .
THE COURT: So we just need to give some thought as to how we can handle this delicately and appropriately so that we can move through those things that we are going to have to move through.
MR. SEARCY: Well, of course, it will be difficult for her. I don't plan on having her sit in here, if that's the Court's concern.
THE COURT: I know we can talk about that later.
Later, during opening statement by Mr. Searcy, the trial judge observed Mrs. Michaud-Berger's emotional state and said:
Mr. Searcy, I am  I'm sorry, you need to stop. I think you have to ask Mrs. Michaud to step outside.
It is this statement by Judge Hurley that Mrs. Michaud-Berger alleged is grounds for his disqualification.
After Mrs. Michaud-Berger was no longer in the courtroom, the trial judge said:
[W]ith respect to Mrs. Michaud, and I want the record to reflect this, because I didn't have an opportunity and there wasn't a way to put it in the record, but when Mrs. Michaud came in she appears to me to be an emotionally very fragile person. She is visibly trembling and I thought was on the verge of breaking down again, and I don't want the record to reflect that I basically told a party to leave the proceeding. I was concerned about, you know, just her ability to sit there.
So for that reason that's why I suggested to counsel that I'd like to ask her to leave, I don't think there is anything wrong with the fact that she came in. And I would just think that we all need to be sensitive to this and I don't think that it's appropriate to say she is going to come in at a point and stay there and then have her leave like that.
So I'm not going to  let me back up. I'm not being clear on this at all. I apologize.
What I'm saying is I thought it was appropriate that she leave when she did leave. I felt she had to. I thought if she had stayed any longer she was going to break down completely.
With respect to her future times in the courtroom, we'll handle that as they arise, but I would deny the motion of mistrial on that ground.
In my view, based on the trial judge's observation of the petitioner's physical and emotional condition, the fact Judge Hurley requested that Mrs. Michaud-Berger step outside the courtroom does not give rise to a well-grounded fear that she cannot receive a fair trial at the hands of the trial judge. To the contrary, the record demonstrates that Judge Hurley had great compassion for Mrs. Michaud-Berger's emotional *454 torment and was concerned about the proper way to handle such a delicate situation. I conclude, therefore, under the atmosphere described by Judge Hurley, his asking that Mrs. Michaud-Berger be removed from the courtroom because he felt she was on the verge of breaking down again, is not a fact that would place a reasonably prudent person in fear of not receiving a fair trial at the hands of Judge Hurley.
Mrs. Michaud-Berger's verified motion for disqualification also alleges that she fears that she will not receive a fair trial on account of the prejudice of Judge Hurley against Mr. Searcy, her attorney. According to her motion, she alleges that it inescapably appears that the following statement by Judge Hurley has impliedly accused her attorney of being less than truthful with him:
Mr. Searcy, you pride yourself on being an excellent lawyer and you know and I know what you did is wrong. You know it.
As this court said in Nassetta v. Kaplan, 557 So.2d 919, 921 (Fla. 4th DCA 1990):
A judge's remarks that he is not impressed with a lawyer's, or his client's behavior are not, without more, grounds for recusal.
In my view, the trial judge's statement that the lawyer knows he is wrong is the equivalent of the trial judge saying that he is not impressed with the lawyer's behavior. Moreover, there are no other factual allegations that are legally sufficient which can be used to buttress Mrs. Michaud-Berger's contention that the trial judge's reprimand of Mr. Searcy gives rise to a well-grounded fear that she will not receive a fair and impartial trial.
In my view, some of the allegations in the affidavits in this case express subjective fears of Mrs. Michaud-Berger and her attorneys and, therefore, do not furnish facts constituting grounds for disqualification. In this case, as in Fischer, the supporting affidavits contained descriptions of the trial judge's facial expressions and non-verbal behavior. In Fischer, the court held that those allegations were legally insufficient and concluded that subjective fears are not a legally sufficient basis on which to obtain disqualification of a trial judge. Fischer, 497 So.2d at 241-42. Thus, in my view, the allegations that express subjective fears do not justify a well-grounded fear of prejudice and are, therefore, legally insufficient.
In her supplement to reply to response to petition for writ of prohibition, Mrs. Michaud-Berger suggests an additional factual ground for recusal. Inasmuch as recusal on this factual ground has not been sought below, I decline to consider it here for the first time. Nassetta, 557 So.2d at 921.
In conclusion, I respectfully dissent and would deny the petition for writ of prohibition. I conclude that the motions for disqualification were legally insufficient for the reasons expressed above and untimely as to the ground based on the Scheller rulings.
NOTES
[1] Defendants in their response argue that the verified motion for disqualification of the judge was technically deficient because it did not contain a certificate of good faith. Petitioners' appendix contains a copy of a docket sheet which indicates that the certificate of good faith was, in fact, filed on July 27th, bearing an earlier docket number than the verified motion for disqualification.
[2] We find petitioners' allegations concerning Judge Hurley's request that she leave the courtroom and those allegations concerning his facial expressions legally insufficient and therefore have not included them in this excerpt.